IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NEI'OSHA HAND and ANNA BOWERS, Personal Representatives of the Estate of Clayton Harris, Jr., <br><br> Plaintiffs, <br><br> v. <br><br> VILLAGE OF BROOKLYN, ILLINOIS, et al., <br><br> Defendants. | CAUSE NO. 03-CV-390-WDS |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant Officer Jeff Crisel's motion for summary judgment. Also before the Court is the Village of Brooklyn and Police Chief Harold Wilson's joint motion for summary judgment. Plaintiff, Nei'osha Hand, has filed a single response to both motions, and the Village of Brooklyn and Chief Wilson a reply.[1] Also before the Court is the Village of Brooklyn and Chief Wilson's motion to strike the affidavits of Michael Baxton, Sr., Richard Hart, Ron Masinelli, Charles Schreiber, and Jeffrey Waters.

## BACKGROUND

This action arises out of an incident that occurred on February 12, 2003. While attempting to apprehend Clayton Harris, Jr., defendant Jeff Crisel (an officer in the Brooklyn, Illinois police department) allegedly ran over Harris with his vehicle and left him there where he eventually died. On May 7, 2003, plaintiffs Nei'osha Hand and Anna Bowers, personal representatives of Harris' estate, commenced a civil rights action pursuant to 42 U.S.C. § 1983 in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, against the following defendants: the Village of Brooklyn, Illinois, and Harold Wilson, the Chief of Police of Brooklyn, in both his individual and professional capacity (Count II); Officer Jeff Crisel (Counts I, III, IV, V); and the City of Venice, Illinois (Counts VI, VII and VIII). The City of

---

[1] The response is filed solely on behalf of plaintiff Nei'osha Hand.

Venice has since been dismissed from this action, as has Count V against Officer Crisel and plaintiff's claim for punitive damages against the Village of Brooklyn and Chief Wilson in Count II.[2] Accordingly, the remaining counts allege: a civil rights violation (namely, of the Fourth and Fourteenth Amendments) against Officer Crisel under 42 U.S.C. § 1983 (Count I); a civil rights violation (namely, of the Fourth and Fourteenth Amendments) against the Village of Brooklyn and Chief Wilson (Count II) under 42 U.S.C. § 1983; a violation of rights afforded by 725 ILCS 5/103-2(c) against Officer Crisel (Count III);[3] and wrongful death against Officer Crisel (Count IV).

All defendants now move for summary judgment.

## ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as matter of law. See, *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. See, *id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. See, *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d

---

[2] In their briefs the parties address plaintiff's claim again Officer Crisel of negligence in violation of 625 ILCS 5/11-205 (Count V) as if it is still pending; however, that count was dismissed pursuant to the Court's order dated November 30, 2004.

[3] Section 5/103-2(c) states:

> Persons in custody shall be treated humanely and provided with proper food, shelter and, if required, medical treatment.

928, 931 (7th Cir. 1995).

I. **Officer Crisel's Motion for Summary Judgment**

Officer Crisel moves for summary judgment on grounds that: his actions were objectively reasonable; he is entitled to immunity under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS § 10/4-102, and that he is entitled to immunity for the good faith performance of his discretionary duties; and that he is entitled to qualified immunity because plaintiff has failed to show that Crisel knew at the time he was attempting to arrest the decedent that Crisel's conduct was unlawful, and further, that the decedent was never "in custody" for purposes of proving the constitutional violation alleged by plaintiffs. Plaintiff asserts, to the contrary, that Officer Crisel's conduct constituted an excessive and unreasonable use of force in the course of the alleged "seizure" of the decedent, in violation of the Fourth Amendment.[4]

In order to prove that Officer Crisel violated the decedent's fourth amendment rights, plaintiffs must show: (1) that Officer Crisel's actions constituted a "seizure;" and (2) that the seizure, if one occurred, was "unreasonable." *Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1993). There is no need to reach the second prong of the test, as the Court finds that a seizure did not occur.

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Id.* (citing *Brower v. County of Inyo*, 489 U.S. 593, 596-97, 109 S.Ct. 1378, 1381 (1989)) (emphasis in original).

Here, plaintiff attempts to argue that the decedent was "seized" within the meaning of the

---

[4]"[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).

Fourth Amendment in that Officer Crisel intentionally used his vehicle to pin the fleeing suspect. However, plaintiff has presented no evidence to support this theory; rather, the overwhelming evidence in the record shows that Officer Crisel did not intend to hit or pin the decedent under the fence with his vehicle in order to detain him.

It is undisputed that Officer Crisel had probable cause to make the traffic stop. It is also undisputed that when Officer Crisel called in the decedent's driver's license information, he was informed that the decedent was wanted on a warrant or warrants, and that when Officer Crisel approached the decedent to arrest him, the decedent fled from Officer Crisel on foot and ran down Illinois Route 3 and onto Granville Street in the City of Venice, Illinois. According to Officer Crisel, he followed in his squad car, lost sight of the decedent on Granville Street, and made the decision to turn into an alley off Granville Street to the left because there is an open field beyond that alley. (See, Doc. 127, Ex. 5 at 111). As he approached that alley, he scanned the opposite alley to the right to see if the decedent had run that way, saw nothing, and then turned left into the alley. (See, *id.* at 111-12). He testified that as he turned left, he did not see the decedent. (See, *id.* at 113). He ran up what felt like a little embankment, hit a wood fence on the right side of the alley, lost control of his vehicle, stepped on the brakes but could not stop, and veered into a metal fence on the left side of the alley. (See, *id.* at 116-22). It was only after the vehicle came to a stop that Officer Crisel heard the decedent screaming and realized that the vehicle had pinned the decedent under the metal fence. (See, *id.* at 123-24).

In an attempt to raise an issue of material fact, plaintiff points to apparent inconsistencies in Officer Crisel's statement to the Illinois State Police on the date of the accident (see, Doc. 115, Ex. 8) and his deposition testimony, and a signed but unsworn second statement given to the investigating officer at a later date (which was presented to a grand jury while Officer Crisel simultaneously asserted his fifth amendment rights and refused to appear before that grand jury). (See, Doc. 115, Ex. 9 and Doc. 127, Ex. 13 at 67-70). That second statement was given after the statement of an eyewitness, Annie R. Severs, was obtained, in which Severs declared that the

decedent jumped a fence on Granville and was not running down the alley. (See, Doc. 115, Ex. 5). Officer Crisel's second statement asserts that he did in fact remember seeing a man running in the alley, did remember seeing the man in front of his car as he was losing control of his car, and did remember seeing the man attempt to hurdle the metal fence just before he ran into that fence. (See, Doc. 115, Ex. 9). Plaintiff claims that Officer Crisel's attempt to change his story so as to account for Severs' statement allows one to draw the inference that he is a liar and that his conduct was intentional. Initially, the Court notes that there is no evidence that Officer Crisel saw or was made aware of Severs' statement. Moreover, these apparent inconsistencies are not dispositive proof of any attempt of the part of Officer Crisel to obfuscate the truth, nor of plaintiff's assertion that Officer Crisel intentionally ran down the decedent. The Investigative Report dated February 12, 2003 states that: "It should be noted that during the entire interview Crisel was extremely upset over the death of Harris. At times he cried and shook uncontrollably.... Crisel was very uncertain of the final moments of his pursuit of Harris stating everything happened so fast." (Doc. 115, Ex. 8 at pp. 1-2). According to the Traffic Crash Investigation Report, prepared by Trooper Dwayne Moore, the steering maneuver Officer Crisel made to avoid the wood fence directed his vehicle toward the metal face under which the decedent was pinned. (See, Doc. 99 at p. 6). The report concludes that the primary cause of the crash was Officer Crisel's failure to drive in a safe manner as he entered the alley. (See, *id.*). The report further states:

> The solid construction of the metal fence made it impossible for Crisel to see through the fence while traveling on Granville. The height of the fence compared to the level of the roadway and the level of the yard where Harris was located made it impossible for Crisel to see Harris by looking over the fence as he traveled on Granville. Although Crisel may have been able to see Harris after entering the alley, it appears he didn't have control of his vehicle. The fact that Harris' body was under the fence after the collision indicated Harris was in the yard at the time the Chevrolet struck the fence. The location of his body suggests he was lying on his back when the fence came down on him. The solid construction of the fence and the close proximity to the fence would have made it impossible for Crisel to see Harris laying in the yard.

(See, *id.*). Moreover, both Officer Crisel's second statement and Annie Severs' statement (that

the officer's vehicle first hit the wooden fence and then the steel fence) reinforce Officer Crisel's position that he lost control of the vehicle and that the incident was in fact accidental.

Plaintiff further attempts to argue that Officer Crisel desired to be on the show "Cops," and theorize that he intentionally ran down the decedent as a dramatic means to that end.  A professed desire to be on a television show is inadequate to support the inference that Officer Crisel intended to use his vehicle to physically detain or harm the decedent.

In *Campbell v. White*, 916 F.2d 421 (7th Cir. 1990), the Seventh Circuit addressed a case similar to the case now before the Court.  In *Campbell*, an Illinois State Trooper was sitting in his squad car in the median of an interstate highway when he observed motorcyclists Campbell and Miller approaching in an easterly direction at a speed well in excess of the posted 55 mile per hour limit.  *Id.* The officer began a high-speed pursuit of Campbell and Miller without the benefit of either oscillating lights or siren, reaching a speed in excess of 100 miles per hour. *Id.* The officer lost sight of the taillights on the two motorcycles as they started into a long sweeping curve. *Id.* During that period of time, Campbell lost control of his motorcycle, traveled into the median, and walked back onto the highway. *Id.* As the officer passed another vehicle, he suddenly observed Campbell standing in the passing lane. The officer's efforts to avoid hitting Campbell were of no avail; Campbell was subsequently struck and killed.  *Id.* at 421-22.

The Seventh Circuit held that there was no seizure within the meaning of the Fourth Amendment because the officer did not intend to use his vehicle in order to physically stop or detain Campbell in the event that Campbell refused to pull over voluntarily.  *Id.* at 423.

Like the officer in *Campbell*, it is clear that Officer Crisel did intend to detain the decedent and that his actions caused or contributed to the termination of the decedent's freedom of movement.   However, there is no evidence that Officer Crisel intended to physically stop or detain the decedent by running him over with his vehicle.  Accordingly, plaintiffs' claim that Officer Crisel violated the decedent's rights under the Fourth Amendment fails.

Plaintiffs' claim against Officer Crisel under the Fourteenth Amendment likewise fails.

Defendants assert that the guarantee of due process under the Fourteenth Amendment historically has been applied to deliberate and conscience-shocking decisions of government officials to cause a deprivation of that right. See, *Daniels v. Williams*, 474 U.S. 327, 328-30 (1985) ("Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"). In support of their claim, defendants cite *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), in which a police pursuit of a speeding motorcycle resulted in the death of the motorcycle passenger. The Court concluded that the police officer's conduct failed to shock the conscience, and noted that:

> [W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed. Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.

*Id.* at 853-54 (internal cite omitted). In response, plaintiff does not cite any case law on this issue and merely states that Officer Crisel's actions do shock the conscious because he ran over an unarmed man. There is no evidence, however, that Officer Crisel's actions constituted a deliberate decision to harm the decedent physically with his vehicle, therefore, plaintiffs' Fourteenth Amendment claim must fail.

Accordingly, plaintiffs have failed to show a constitutional violation, and summary judgment in favor of Officer Crisel is appropriate on Count I of the complaint.

With respect to Count III against Officer Crisel, plaintiffs allege that he violated the decedent's right to be treated humanely while in custody as provided in 725 ILCS 5/103-2(c). Again, Officer Crisel argues that the decedent was never "in custody." Based on the Court's discussion with respect to Count I, the Court agrees. Summary judgment is granted in favor of Officer Crisel on Count III.

Finally, plaintiffs allege a state law wrongful death claim against Officer Crisel (Count

IV).   Officer Crisel states that he is entitled to qualified immunity unless he acted in a willful and wanton manner. The Tort Immunity Act states that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202.  Here, Officer Crisel was involved in the execution or enforcement of the law.  Accordingly, plaintiffs' wrongful death claim is unavailing unless Officer Crisel's conduct was willful or wanton.[5]

However, neither Officer Crisel nor the plaintiffs appear to have adequately addressed in their briefs the precise issue of whether Officer Crisel's conduct was "willful and wanton" under Illinois law.[6]  The Court is not obligated to make the parties' arguments for them, and so,  the Court declines to grant summary judgment with respect to Count IV.

## II.     The Village of Brooklyn and Chief Wilson's Motion for Summary Judgment

The conclusion that the decedent did not suffer a deprivation of his constitutional rights under either the Fourth or Fourteenth Amendments precludes plaintiffs' claim that the Village of Brooklyn and Chief Wilson caused a deprivation of the decedent's constitutional rights.[7]  See, *City of Los Angeles v. Heller*,  475 U.S. 796, 799, 106 S.Ct. 1571, 1573 (1986) ("neither *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact... the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police

---

[5] "'Willful and wanton conduct' as used in this [Tort Immunity] Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

[6] Plaintiffs' state law wrongful death claim is "not dependent on the alleged constitutional violation, but instead on a theory of wilful and wanton negligence...." *Richman v. Sheahan*, 270 F.3d 430, 442 (7th Cir. 2001), *comparing Medina v. City of Chicago*, 606 N.E.2d 490, 498 (Ill. App. Ct. 1992) (holding that there was no inconsistency between jury's verdict for plaintiff on wrongful death claim and for defendant on § 1983 claim of excessive force: "Two different standards are involved.").

[7] Although Chief Wilson is sued in both his individual and official capacities, there has been no allegation that he was personally involved in the alleged violation of the decedent's constitutional rights, i.e., had knowledge of the pursuit of or the risk to the decedent, as is required for a suit against an official in his individual capacity. See, *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2002).  Accordingly, any claim against Chief Wilson in his individual capacity is dismissed.

officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original); see also, *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) ("*Heller* establishes that a city's liability is derivative of its police officer's liability"); *Thompson v. Boggs*, 33 F.3d 847, 859 n.11 (7th Cir. 1994) ("we choose to follow the clear holding of *Heller*").

## CONCLUSION

Based on the foregoing, the Court **GRANTS** defendants Village of Brooklyn and Chief Harold Wilson's motion for summary judgment (Doc. 93). The Court **GRANTS** defendant Officer Jeff Crisel's motion for summary judgment (Doc. 97) on Counts I and III, and **DENIES** Officer Jeff Crisel's motion for summary judgment (Doc. 97) on Count IV of the complaint.

Because the Court did not rely upon the affidavits of Michael Baxton, Sr., Richard Hart, Ron Masinelli, Charles Schreiber, and Jeffrey Waters in ruling on the motion for summary judgment, the Village of Brooklyn and Chief Harold Wilson's motion to strike (Doc. 132) is **DENIED** as moot.

IT IS SO ORDERED.

DATED: June 15, 2005

                                        s/ WILLIAM D. STIEHL
                                              DISTRICT JUDGE